# In the United States Court of Federal Claims

## OFFICE OF SPECIAL MASTERS
### No. 21-1811V

| | |
|---|---|
| YUQING WU, by her legal guardian, JIAN QIAN, <br><br>                          Petitioner, <br> v. <br><br> SECRETARY OF HEALTH AND HUMAN SERVICES, <br><br>                     Respondent. | Special Master Horner <br><br> Filed: October 11, 2023 <br><br> Reissued for Public Availability: November 6, 2023 |

*Yuqing Wu, by Jian Qian, San Gabriel, CA, pro se petitioner.*
*Mary Eileen Holmes, U.S. Department of Justice, Washington, DC, for respondent.*

## DECISION[1]

On September 3, 2021, petitioner Jian Quian, acting on behalf of Yuqing Wu, filed a petition under the National Childhood Vaccine Injury Act, 42 U.S.C. § 300aa, *et seq.* (2012),[2] alleging that Ms. Wu, 93 years of age at the time, suffered injuries, including chronic encephalopathy, as a result of her September 13, 2018 influenza ("flu") vaccination. (ECF No. 1.)[3] Petitioner also indicates that at least one other unspecified vaccine was administered at that time. (*Id*. at 1.) Based on the petitioner's description of Ms. Wu's medical course, the petition further contends that Ms. Wu suffered "a cascade of illnesses that ensued from the vaccinations." (*Id*. at 3.) For the reasons set forth below, this case is now DISMISSED.

### I.    Procedural History

As noted above, this case was initially filed on September 3, 2021. (ECF No. 1.) Accompanying the petition were documents marked as Exhibits 1-10. Exhibit 1 is a copy of Ms. Wu's photo identification. Exhibits 2-8 are select records from Ms. Wu's

---

[1] Pursuant to Vaccine Rule 18(b), this Decision was initially filed on October 11, 2023, and the parties were afforded 14 days to propose redactions. The parties did not propose any redactions. Accordingly, this Decision is reissued in its original form for posting on the court's website.

[2] Within this decision, all citations to § 300aa are in reference to the relevant sections of the National Childhood Vaccine Injury Act.

[3] "ECF No." refers to the location of each document on the court's electronic docket.

various encounters at the San Gabriel Valley Medical Center. Exhibit 9 is an August 4, 2021 letter from Ms. Wu to Zhenghong Yuan, M.D., requesting her medical records accompanied by an acknowledgment of receipt (but without records). Exhibit 10 is an authorization for release of Ms. Wu's medical records from Optum seeking records from Drs. Chan, Young, and Yang that was signed and dated by Ms. Wu on August 16, 2021 (but, again, without records). Petitioner also filed a motion for leave to proceed in forma pauperis.[4]

This case was originally assigned to another special master. (ECF Nos. 7-8.) The special master required petitioner to file documentation proving that he is the legal representative of Ms. Wu. (ECF No. 9.) On October 12, 2021, petitioner filed a document signed by both Ms. Wu and Mr. Qian and styled as "Notice of appointment of Mr. Jian Qian as legal representative and/or guardian for Petitioner." (ECF No. 11.)

Thereafter, on December 16, 2021, the special master held a status conference. (ECF No. 12.) She provided petitioner with information on the Vaccine Program and encouraged him to secure counsel. (ECF No. 13, p. 1.) In that regard, petitioner was ordered to file a status report providing an update on his search for counsel by no later than January 31, 2022. (*Id*. at 2.)

During the status conference, the special master also indicated that the medical records filed with the petition (*i.e.*, Exhibits 2-8) were only abstracts of Ms. Wu's hospital encounters and not complete medical records. (*Id*. at 1-2.) The special master also observed that there are significant gaps between the encounters for which records had been filed. (*Id*.) The special master advised that petitioner's filings were insufficient and instructed petitioner to file "all of Ms. Wu's medical records, not just discharge summaries of her hospitalizations, for a three-year period prior to vaccination and all medical records from after vaccination." (*Id*.) The special master further cautioned that petitioner's allegation of a post-vaccination encephalopathy appeared to be inconsistent with the records that had been filed. (*Id*. at 1.)

The case was reassigned to the undersigned on February 4, 2022. (ECF No. 14-15.) On February 7, 2022, petitioner filed a status report outlining various attempts to secure both counsel and a medical doctor to opine on the case. (ECF No. 16.) Petitioner indicated he was unsuccessful in both searches and attributed his lack of success to indifference and lack of incentive on the part of potential counsel and experts. (*Id*.) On February 9, 2022, I issued a Scheduling Order based on my review of petitioner's status report and the record to date. (ECF No. 17.)

In the February 9, 2022 Scheduling Order, I included a detailed review of each of the medical records that had been filed to date, specifically reiterating the previously assigned special master's concern that the records are not complete. (*Id*. at 1-3.) I also included for petitioner's benefit an explanation of the legal standard for a finding of entitlement to compensation in this program. (*Id*. at 3-4.) I noted that Ms. Wu's medical records reflect that the September 2018 illness petitioner alleges to have been the

---

[4] Petitioner's motion to proceed in forma pauperis is hereby GRANTED.

beginning of Ms. Wu's vaccine-related injury was instead diagnosed as sepsis.  (*Id*. at 4.)  I further explained:

> [W]ithout interim primary care or specialist records, [Ms. Wu's] emergency department records are indicative only of acute episodes with little basis for connecting emergency encounters occurring months apart.  None of the medical records filed to date suggest that any of Ms. Wu's treating physicians felt that her September 2018 presentation, or any subsequent presentation, was causally related to her vaccination(s).
>
> . . .
>
> . . . [T]he medical records that have been filed so far show episodic acute presentations over years, a pattern that is not necessarily unexpected in a patient of over 90 years of age.  In considering whether and how to proceed, petitioner should take note that, despite any personally held view, Ms. Wu's medical history does not appear inherently suspicious for an external trigger to explain her deterioration in health.

(*Id*. at 4-5.)

I acknowledged petitioner's search for counsel and explained that I "do not discourage petitioner from continuing that pursuit."  (*Id*. at 5.)  However, I indicated that "at this time . . . the filing of further medical records will be critical to any further meaningful progress in this case."  (*Id*.)  I set a 90-day deadline for petitioner to file "complete medical records from each and every one of Ms. Wu's treating physicians dating from September of 2015 to the present."  (*Id*. at 6.)  I stressed that, because he is unrepresented by counsel, petitioner "remains solely responsible for meeting all deadlines and filing obligations pursuant to this order and any other order issued by the undersigned."  (*Id*. at 6.)

On May 9, 2022, petitioner filed a lengthy status report covering a number of items.  (ECF No. 19.)  First, petitioner included a paragraph of argumentation regarding whether Ms. Wu's sepsis diagnosis is compatible with vaccine causation.  (*Id*. at 1.)  Second, petitioner included a paragraph indicating that records by Drs. Chan and Young would not be informative because they were seen only on "more or less say-so occasions," during which petitioner did not report Ms. Wu's more serious vaccine-related problems in light of these doctors being seen only on a temporary basis.  (*Id*. at 1-2.)  Third, petitioner provided an "addendum" to his prior status report delineating further unsuccessful efforts to retain counsel and confirming he would cease seeking counsel.  (*Id*. at 2-3.)  Fourth, petitioner indicated that he was filing an opinion letter by WenCheng Jen, M.D., to support his claim.  (*Id*. at 2.)  Petitioner indicated that he had requested that Dr. Jen secure Ms. Wu's records from her primary care physician, Dr. Yuan.  (*Id*.)  Petitioner represented that his filing included the following: (1) Optum medical records; (2) Dr. Jen's PCP records; (3) Dr. Jen's Opinion; and (4) the status report itself.  (*Id*. at 3.)  Finally, petitioner indicated that he had specific questions

regarding his burden of proof as discussed in my February 9, 2022 Scheduling Order. (*Id*. at 3-4.)  On the same date, petitioner filed 24 pages of records from Optum (formerly known as Healthcare Partners), San Gabriel, along with a letter from Dr. Jen. (ECF No. 20 and ECF No. 20-1 respectively.)  This filing included some records by Drs. Chan, Yang, and Young, but it did not include any records by Dr. Jen.

Thereafter, I held a status conference on June 2, 2022, to address petitioner's questions and the completeness of the medical records.  (ECF No. 22.)  During that call, I noted that petitioner had filed 24 pages of medical records in response to my February 9, 2022 Scheduling Order.  Petitioner indicated, however, that his filing should have included more records, including records by Dr. Jen.  (*Id*. at 1.)  I explained to petitioner that the records he was referencing had not been filed and that he should re-file them to ensure that they are included in the record.  (*Id*.)  I also noted that the records petitioner filed from Optum all post-dated the vaccinations at issue and that, at a minimum, records from the encounter where Ms. Wu received the subject vaccinations remained outstanding.  (*Id*. at 1-2.)  Respondent's counsel further stressed that no records from any provider had been filed for the period from 2015 to 2018.  (*Id*.)  I reiterated that "petitioner should endeavor to provide complete medical records from each medical provider Ms. Wu has seen."  (*Id*. at 2.)  I also answered petitioner's questions regarding his burden of proof as set forth in *Althen v. Secretary of Health & Human Services,* 418 F.3d 1274 (Fed. Cir. 2005).  (*Id*. at 2-3.)  I ordered petitioner to file outstanding medical records by no later than August 1, 2022, and indicated that further scheduling would be determined upon review of those records.

On August 1, 2022, petitioner filed a motion for extension of time due to having contracted Covid-19, which was granted.  (ECF Nos. 23-24.)  Thereafter, petitioner's medical records were due by November 1, 2022.  (ECF No. 24.)  However, petitioner's November 1, 2022 deadline lapsed without any filing by petitioner.  On November 7, 2022, I issued an Order to Show Cause requiring petitioner to "show cause why this case should not be dismissed" due to petitioner's failure to meet his filing deadline to file complete medical records.  (ECF No. 25.)  I noted that, subsequent to initiating this case, petitioner had only filed a further 24 pages of medical records despite the case having been pending for over a year.  (*Id*. at 3-4.)  Although I acknowledged that collecting medical records is challenging for a pro se petitioner, I explained that "this case cannot be permitted to remain pending indefinitely" and that "leave for additional time will only be granted if petitioner can demonstrate that reasonable progress is being made toward completing necessary filings."  (*Id*. at 4.)

In response to the Order to Show Cause, petitioner filed a status report on January 9, 2023.  (ECF No. 26.)  Regarding his noncompliance, petitioner indicated that he never received "any notification from the Court that there is such a deadline having been set for petitioner."  (*Id*. at 1.)  Regarding the filing of medical records, petitioner indicated he is "attaching Ms. Yuqing Wu's clinical record" from Dr. Jen.  (*Id*.)  He indicated that "[t]his document, of some 71 pages, appears to include a sizeable amount of information on Ms. Wu's claimed problems attributable to the vaccine given her."  (*Id*.)  Petitioner instructed that "[t]he link to this record in the filing appears in the body of the

email . . . . The link is openable on the model [of computer] petitioner is using, yet may have presented a problem on another computer such as the Court's." (*Id*.)  However, none of petitioner's docketed filings in the case included any e-mail or link.  Petitioner further indicated that "petitioner also believes that as the case moves forward, more records in support of the claims will surface that will meet or nearly meet the standard criteria set by the law and pointed to by Your Special Master and that will strengthen the grounds of this petition." (*Id*.)

On the same date, petitioner filed a motion for extension of time.  (ECF No. 27.)  In his motion, petitioner reiterated that he was unaware of his November 1, 2022 filing deadline and that he is having difficulty engaging physicians to do the research necessary to support a vaccine-causation opinion.  (*Id*. at 1.)  Thus, he requested "substantial additional time" to secure a medical opinion.  (*Id*.)  Regarding medical records, petitioner acknowledged that records by Dr. Yuan remain outstanding but asked direction from the court regarding how to secure records from Dr. Yuan.  He also indicated that "[r]epetitive hospital records can be expected to be obtained in a foreseeable number of days if cost is not to become a real problem." (*Id*.)

On January 30, 2023, petitioner filed an authorization for release of medical records from Garfield Medical Center.  (ECF No. 28.)  A handwritten notation indicates that 166 pages of medical records were e-mailed to petitioner on January 27, 2023.  (*Id*. at 1.)  However, no records from Garfield Medical Center were filed.  On February 6, 2023, I granted petitioner's motion for extension of time and ordered petitioner to file additional medical records as described in my June 2, 2022 Scheduling Order by no later than May 8, 2023.  (ECF No. 29.)  Thereafter, petitioner filed additional medical records on April 14, 2023.  (ECF No. 30.)  Specifically, petitioner filed five separate documents that included a total of about 140 pages of records from San Gabriel Valley Medical Center.

On May 8, 2023, petitioner filed a motion for extension of time.  (ECF No. 31.)  Petitioner's motion asserts that his filings of January 30, 2023, and April 14, 2023, provided the court with complete records from both Garfield Medical Center and San Gabriel Valley Medical Center.  (*Id*. at 1.)  Petitioner represented that his May 9, 2022, and January 9, 2023, filings provided complete medical records for both WenCheng Jen, M.D., and the Optum organization.  (*Id*.)  Petitioner further indicated that "[b]y this submission, the Court is to receive records from Jaime Henriquez, MD, and from Thein Htay, MD with Henry C. Yee medical group, though the actual doctor we saw on our sole visitation to the Henry C. Yee medical group was not Dr. Henry C. Yee himself." (*Id*.)  Accompanying the motion was a four-page record of an encounter with Dr. Henriquez of February 27, 2023, and a two-page record of an encounter of February 16, 2023, signed by Dr. Yee.  (ECF Nos. 31-1; 31-2.)  Petitioner's motion suggested he is moving to "the next challenge" of forwarding medical records to medical experts to obtain a supporting medical opinion.  (ECF No. 31.)

On May 12, 2023, I issued an order granting petitioner's motion for extension of time.  (ECF No. 32.)  However, I explained of petitioner's motion that, despite never

having confirmed complete records were filed, "petitioner's stated efforts appear to have shifted toward seeking a medical opinion supporting this claim. Petitioner's motion appears to request additional time for that purpose rather than for filing additional medical records." (*Id*. at 2.) I described in detail what records have been received by the court and what records petitioner represented were filed but were not. Specifically, I noted that petitioner had not filed any records from Garfield Medical Center and had not filed any records by Dr. Jen despite representing that he had done so. (*Id*. at 1-2.) I stressed that all filings must be PDF documents. I ordered petitioner to file, by no later than June 12, 2023, complete medical records from Garfield Medical Center and Dr. Jen along with a statement indicating whether petitioner believes all necessary medical records have been filed. (*Id*. at 2.)

Petitioner's June 12, 2023 filing deadline lapsed without any filing by petitioner. On June 21, 2023, I issued an Order to Show Cause. (ECF No. 33.) I advised that "[p]etitioner shall read this order carefully as compliance with this order is required to avoid involuntary dismissal of this petition." (*Id*. at 1.) I attached a courtesy copy of the May 12, 2023 Order and required petitioner to show cause why the case should not be dismissed by completing the filing required by the May 12, 2023 Order. Petitioner's show cause deadline was August 21, 2023. (*Id*.)

On July 24, 2023, the Clerk of Court docketed that the Order to Show Cause had been returned to the court as "unclaimed" and "unable to forward." (ECF No. 34.) In an order dated July 26, 2023, I noted that the certified mail tracking number docketed by the Clerk of Court showed that the petitioner had not responded to a notice left at the delivery address to schedule redelivery. (ECF No. 35.) I directed the Clerk to resend the Order to Show Cause by first class mail. I noted that if petitioner has any questions about the Order to Show Cause or the order instructing redelivery, he should contact my chambers promptly. (*Id*.)

Petitioner's August 21, 2023 show cause deadline lapsed without any filing by petitioner. Accordingly, on September 11, 2023, I issued an order advising petitioner that "[p]etitioner is hereby put on notice that the undersigned intends to issue a decision involuntarily dismissing this case pursuant to Vaccine Rule 21(b). . . . Absent action by petitioner, this decision will issue on Wednesday, October 11, 2023." (ECF No. 36.) I explained the procedural history of the case leading up to the June 21, 2023 Order to Show Cause, including the fact that the May 12, 2023 Order had specifically identified filing deficiencies petitioner needed to correct. (*Id*. at 1-2.) I indicated that "[p]etitioner's failure to file complete medical records despite having been provided two years within which to do so, his failure to respond to multiple court orders, including an Order to Show Cause that specifically warned him his petition was in danger of involuntary dismissal, and his complete lack of contact with the court for approximately four months subsequent to his May 8, 2023 filing, all contribute to a failure to prosecute." (*Id*. at 2.)

Petitioner still has not had any contact with the court subsequent to his May 8, 2023 filing.

## II.    Medical Records

Before Ms. Wu's vaccination date, the medical records submitted to the court show she was admitted to the hospital on February 21, 2016, March 3, 2017, and May 21, 2018.  (Ex. 2, p. 1 (ECF No. 30-2, p. 1); Ex. 3, p. 1 (ECF No. 30-3, p. 1); Ex. 4, p. 1 (ECF No. 30-4, p. 1).)  On February 21, 2016, Ms. Wu was admitted to the emergency department at San Gabriel Valley Medical Center with chest pain, exaggerated hypertension, dizziness, nausea, vomiting, diabetes, and fatigue.  (Ex. 2, p. 5.)  This record describes Ms. Wu's past medical history to include "angina, arthritis, coronary artery disease, dementia, Diabetes Type II, gastroesophageal reflux disease, hypertension, postmenopausal, and urinary problems."  (*Id.* at 3.)  She was discharged on February 24, 2016, after receiving cardiac enzyme tests, an EKG, and an MRI, all which revealed no acute issues.  (*Id.* at 15.)  On March 3, 2017, Ms. Wu presented to the emergency department again with increasing weakness and left hip pain and saw Dr. Frederick Levin.  (Ex. 3, p. 2.)  He noted that his diagnostic impression included an altered mental status.  (*Id.*)  During this encounter, Ms. Wu was diagnosed with "pneumonia," "osteoarthritis," "diffuse cortical atrophy, chronic small vessel ischemic disease of the white matter, and chronic opacification of the paranasal sinuses."  (*Id.* at 9-11.)  Finally, on May 21, 2018, Ms. Wu presented to the hospital with lateral chest wall pain.  (Ex. 4, p. 2.)  After reviewing her EKG, chest x-ray, and labs, the treating physician determined there was "no evidence of any abnormality whatsoever."  (*Id.* at 4.)

Ms. Wu allegedly received multiple vaccinations, including a flu vaccination, on September 13, 2018, though no records have been filed to evidence this.  The next day, on September 14, 2018, Ms. Wu was admitted to the hospital due to a fever, nausea, vomiting, and loose stool.  (Ex. 5, p. 5; ECF No. 30-5, p. 1.)  These records do note a reported history of Ms. Wu having received a flu vaccination the day prior.  (Ex. 5, p. 13.)  Ms. Wu was diagnosed with sepsis, mental status changes, hypotension, leukocytosis, and diabetes.  (*Id.* at 16.)  Her chest x-ray revealed "mild cardiomegaly and possible early heart failure."  (*Id.*)  Her altered mental state was believed to be attributable to either her sepsis or her hypotension.  (*Id.* at 18.)  She was admitted to the ICU, treated with IV antibiotics, and counseled regarding her bradycardia and hypotension.  (*Id.*)  Ms. Wu regained her normal mental state during her hospitalization.  (*Id.* at 23.)  Based on the records filed, Ms. Wu was not diagnosed with encephalopathy during this hospitalization.

On October 30, 2018, Ms. Wu saw her primary care physician, Dr. Kenneth Chan, for a follow up appointment regarding her hypertension and suspected glaucoma.  (ECF No. 20, p. 22-23.)  Ms. Wu was reportedly "relatively healthy" and there was no discussion of her September 14, 2018 hospitalization.  (*Id.* at 22.)  No concerns were noted regarding her mental status, and she was noted on physical exam to be in no acute psychiatric distress and with normal affect.  (*Id.* at 23.)  Ms. Wu saw Dr. Chan again on December 4, 2018, to address her constipation.  (*Id.* at 15-16.)  No other concerns were documented.  (*Id.*)  Ms. Wu was not diagnosed by Dr. Chan with encephalopathy at either of these visits.

Ms. Wu was admitted to the hospital on December 21, 2018, for "rapid heart rate, hypotension, [and] generalized weakness." (Ex. 6, p. 12; ECF No. 30-6, p. 31.)  Ms. Wu was diagnosed with "acute non-ST-elevation myocardial infarction, lactic acidosis, dehydration, generalized weakness, [and] hypoproteinemia." (Ex. 6, p. 20.)  She was referred to Dr. Grace Huang for a cardiology consultation, given IV fluids, and started on aspirin and atorvastatin. (*Id.*)  Ms. Wu followed up with Dr. Chan on January 24, 2019, regarding her diagnosis of coronary heart disease in the native artery following her visit to the hospital. (ECF No. 20, p. 13.)  She was clinically stable, "awake and alert," and in no acute distress. (*Id.*)  Dr. Chan gave her refills of her medication including Plavix, aspirin, and atorvastatin. (*Id.*)  There is no indication that Ms. Wu was diagnosed with encephalopathy during her admission or at her subsequent encounter with Dr. Chan.

Ms. Wu saw Dr. David Yang for a follow up appointment on February 1, 2019. (*Id.* at 11-12.)  On physical examination, Ms. Wu was "alert and oriented x3" and in no apparent distress, though she was observed to be "elderly, frail." (*Id.* at 12.)  She was to return in six months. (*Id.* at 11.)  She was seen again by Dr. Yang for further follow up on October 18, 2019, and reported "[n]o major problems since last visit." (*Id.* at 8.)

On May 30, 2020, Ms. Wu was admitted to the hospital with slurred speech. (Ex. 7, p. 2.)  She was diagnosed with "encephalopathy secondary to stroke." (*Id.* at 37.)  A year later, on May 26, 2021, Ms. Wu was admitted to the hospital again for slurred speech. (Ex. 8, p. 10; ECF No. 30-7, p. 17.)  The emergency department physician noted that her son, who brought her into the hospital, reported "similar symptoms presented over 1 year ago which resulted in presumptive diagnosis of TIA." (Ex. 8, p. 10.)  Ms. Wu underwent a "complete transthoracic echocardiogram" which found normal left ventricular function, mild mitral regurgitation, and mild tricuspid regurgitation. (*Id.* at 16.)  The emergency room doctors reported baseline dementia, usual confusion, and no new neurological defects. (*Id.* at 17.)  Ms. Wu had a follow up encounter with Dr. Yang on June 19, 2020, at which time she was "without complaints." (ECF No. 20, pp. 4-7.)

Nearly three years later, in February of 2023, Ms. Wu was seen by two cardiologists, Drs. Yee and Henriquez, for follow up after an unspecified hospitalization for paroxysmal atrial fibrillation. (ECF No 31-1; 31-2.)

### III.   Letter from WenCheng Jen, M.D.

In support of his case, petitioner has filed the opinion of Dr. WenCheng Jen. (ECF No. 20-1.)  Dr. Jen states, "It is my opinion that some two vaccines that were injected into Ms. Yuqing Wu on September 13, 2018 have, more likely than not, caused the cascade of abnormalities that ensued." (*Id.*)  He postulated that Ms. Wu's vaccination "contributed to the advancement of her stroke heart diseases later like the non-ST elevation myocardial infarction (NSTEMI) and the stroke" in addition to her state of confusion. (*Id.*)  Dr. Jen stated that the vaccination created "the high potential for decompensation and/or shock during" Ms. Wu's September 2018 appointments and "the high probability of cardiopulmonary collapse with the high risk of morbidity and

mortality that were manifest over" Ms. Wu's December 2018 hospitalization.  (*Id.*)  He explained, "I notice that her unusual confusional state and her significantly decreased level of consciousness have lasted for more than one half year since the vaccination date."  (*Id.*)  Dr. Jen did not provide any further explanation or medical evidence to support his opinion.

## IV.   Analysis

### a.  Petitioner Has Failed to Prosecute this Petition

Vaccine Rule 2(c)(2)(A) requires petitioner to include with the petition "a certified copy of all available medical records supporting the allegations in the petition."  The rule specifies that this includes records pertaining to the vaccination itself, the alleged injury, and post-vaccination treatment.  Respondent's obligation under the Vaccine Rules to provide a report setting forth his position in this case is premised on petitioner having satisfied all required documentary submissions.  *See* Vaccine Rule 4(c)(1).  Vaccine Rule 21(b) provides that "[t]he special master or the court may dismiss a petition or any claim therein for failure of the petitioner to prosecute or comply with these rules or any order of the special master or the court."

In this case, as discussed more thoroughly in the procedural history above, petitioner has been permitted a full two years within which to file required medical records.  When this case was reassigned to the undersigned, I issued an extensive order detailing my review of the records and explaining the need for additional records. (ECF No. 17.)  Thereafter, I held a status conference with petitioner to further explain his filing obligations.  (ECF No. 22.)  After petitioner filed some additional records, a further order was issued explaining the remaining filing deficiencies.  (ECF No. 32.) When petitioner did not comply with his subsequent filing deadline, an order to show cause issued explaining the case was at risk of involuntary dismissal for failure to prosecute.  (ECF No. 33.)  When petitioner failed to respond to the order to show cause, a further order was issued warning petitioner that this case would be dismissed on October 11, 2023, if petitioner took no action.  (ECF No. 36.)

Petitioner's failure to file complete medical records despite having been provided two years within which to do so, his failure to respond to multiple court orders, including an Order to Show Cause that specifically advised him his petition was in danger of involuntary dismissal, and his complete lack of contact with the court, now for approximately five months subsequent to his May 8, 2023 filing, all contribute to a failure to prosecute.

### b.  Petitioner Has Had a Full and Fair Opportunity to Develop the Record

Pursuant to Vaccine Rule 8(a), the special master "will determine the format for taking evidence and hearing argument based on the specific circumstances of each case and after consultation with the parties."  Vaccine Rule 8(d) expressly authorizes the special master to decide a case based on the written record without holding an

evidentiary hearing.  However, special masters are also tasked with giving each party a "full and fair opportunity" to develop the record of the case.  Vaccine Rule 3(b)(2).

For the reasons discussed above, I have concluded that the record of this case is incomplete due to petitioner's failure to prosecute.  However, under the specific circumstances of this case, I also conclude, for many of the same reasons discussed above, that I have provided petitioner a full and fair *opportunity* to develop the record. In particular, although he has not filed complete records that would facilitate respondent's comprehensive review of Ms. Wu's medical history, petitioner did initially file with his petition the medical records that he asserts support his underlying factual allegations.  Additionally, after I explained his burden of proof in my February 9, 2022 Scheduling Order, he further filed a medical opinion by Dr. WengCheng Jen that he asserts is supportive of his claim.  To the extent these filings are insufficient, petitioner was given ample notice of the deficiencies.  To the extent petitioner sought to file additional medical records by Dr. Jen and Garfield Medical Center that may have been relevant to his claim, he was advised of his failure to accomplish any filing of those documents and given the opportunity to correct his errors.

Accordingly, it is also appropriate to reach the merits of this case at this time based on the existing record.

### c.  Petitioner Has Not Demonstrated Entitlement to Compensation

#### i.  *Legal Standard*

Under the National Vaccine Injury Compensation Program, compensation awards are made to individuals who have suffered injuries after receiving vaccines. *See* § 300aa-13.  In general, to gain an award, a petitioner must make a number of factual demonstrations, including showing that an individual received a vaccination covered by the statute; received it in the United States; suffered a serious, long-standing injury; and has received no previous award or settlement on account of the injury.  *See* § 300aa-11.  Finally – and the key question in most cases in the Program – the petitioner must also establish a *causal link* between the vaccination and the injury. To receive compensation in the Vaccine Program, petitioner must prove either (1) that Ms. Wu suffered a "Table Injury" – *i.e.*, an injury falling within the Vaccine Injury Table – corresponding to a covered vaccine, or (2) that Ms. Wu suffered an injury that was actually caused by a covered vaccine.  *See* § 300aa-13(a)(1)(A); § 300aa-11(c)(1).  To satisfy the burden of proving causation in fact, petitioner must show by preponderant evidence: "(1) a medical theory causally connecting the vaccination and the injury; (2) a logical sequence of cause and effect showing that the vaccination was the reason for the injury; and (3) a showing of a proximate temporal relationship between vaccination and injury."  *Althen*, 418 F.3d at 1278.

Petitioner "must specify [Ms. Wu's] vaccine-related injury and shoulder the burden of proof on causation."  *Broekelschen v. Sec'y of Health & Human Servs.*, 618 F.3d 1339, 1346 (Fed. Cir. 2010).  "Although the Vaccine Act does not require absolute

precision, it does require the petitioner to establish an injury – the Act specifically creates a claim for compensation for 'vaccine-related injury or death.'"  *Stillwell v. Sec'y of Health & Human Servs.*, 118 Fed. Cl. 47, 56 (2014) (emphasis omitted) (quoting 42 U.S.C. § 300aa-11(c)).  "[T]he function of a special master is not to 'diagnose' vaccine-related injuries, but instead to determine 'based on the record evidence as a whole and the totality of the case, whether it has been shown by a preponderance of the evidence that a vaccine caused the [petitioner]'s injury.'"  *Andreu ex rel. Andreu v. Sec'y of Health & Human Servs.*, 569 F.3d 1367, 1382 (Fed. Cir. 2009) (quoting *Knudsen ex rel. Knudsen v. Sec'y of Health & Human Servs.*, 35 F.3d 543, 549 (Fed. Cir. 1994)).  In order to present an "injury" cognizable under the Vaccine Act, "[m]edical recognition of the injury claimed is critical" and petitioner must assert "more than just a symptom or manifestation of an unknown injury."  *Broekelschen*, 618 F.3d at 1349.

The Vaccine Act states that the special master shall not find entitlement to compensation "based on the claims of a petitioner alone, unsubstantiated by medical records or by medical opinion."  § 300aa-13(a)(1).  Nonetheless, special masters are not bound by the reports, summaries, or conclusions contained in the medical records.  § 300aa-13(b)(1).  Rather, the special master must consider the entire record.  *Id.*  Petitioner has the burden of demonstrating the facts necessary for entitlement to an award by a "preponderance of the evidence."  § 300aa-13(a)(1)(A).  Under that standard, the existence of a fact must be shown to be "more probable than its nonexistence."  *In re Winship*, 397 U.S. 358, 371 (1970) (Harlan, J., concurring).

### ii.  Failure to Establish Receipt of a Covered Vaccine

As a threshold issue, in order to state a claim under the Vaccine Act, petitioner must establish that Ms. Wu received a vaccine set forth within the Vaccine Injury Table.  § 300aa-11(c).  For this reason, petitioner's allegation of the administration of unspecified vaccinations in addition to Ms. Wu's alleged flu vaccination patently cannot suffice.  The flu vaccine that petitioner alleges Ms. Wu received is included on the Vaccine Injury Table and, therefore, can support a claim if petitioner establishes by preponderant evidence that the vaccine was administered as alleged.  42 C.F.R. § 100.3.

The fact of a vaccination need not itself be proven by medical records or medical opinion.  *See, e.g. Wonish v. Sec'y of Health & Human Servs.*, No. 90-667V, 1991 WL 83959, at *4 (Cl. Ct. Spec. Mstr. May 6, 1991) (stating, with regard to § 300aa-13(a)(1), that "[i]t seems obvious then that not all elements must be established by medical evidence" and that "[v]accination is an event that in ordinary litigation could be established by lay testimony" as "[m]edical expertise is not typically required.").  However, the fact of the vaccination must still be preponderantly established.  § 300aa-13(a)(1)(A).

In this case, petitioner has not documented Ms. Wu's receipt of a flu vaccine by preponderant evidence.  Petitioner alleges the vaccine was administered on September 13, 2018, at the office of Dr. Zhenghong Yuan.  (ECF No. 1, p. 1.)  However, petitioner

has not filed any vaccine administration record or any record of the medical encounter at which petitioner allegedly received the vaccination.  Although petitioner has filed some records from San Gabriel Valley Medical Center electronically signed by Dr. Yuan, no records have been filed reflecting primary care office visits with Dr. Yuan despite petitioner having filed confirmation of a records request to Dr. Yuan's office. (ECF No. 28.)  An emergency room history from the next day does indicate Ms. Wu received a flu vaccine the day prior (ECF No. 30-5, p. 25; Ex. 5, p. 13.); however, this history was not consistently stated and is not entirely consistent with petitioner's allegation that multiple vaccines were administered (ECF No. 1, ¶ 2.)  Moreover, the absence of either a vaccine administration record or an encounter record from Dr. Yuan is particularly concerning because no explanation has been provided for its absence and petitioner alleges multiple vaccinations were administered without being able to identify all of the vaccines.

### iii.  Failure to State a Cognizable Injury Regarding the Alleged "Cascade of Illnesses"

In addition to more specifically asserting the presence of an encephalopathy, petitioner alleges that Ms. Wu's flu vaccination resulted in a "cascade of illnesses." (ECF No. 1, p. 5.)  In support of that allegation, petitioner filed a letter from Dr. Jen, dated April 22, 2022.  (ECF No. 20-1.)  The letter states, "It is my opinion that some two vaccines . . . have, more likely than not, caused the cascade of abnormalities that ensued, some of which have since become recurrent with her, peaking in the high potential for decompensation and/or shock during her 9/2018 hospitalization, and in the high probability of cardiopulmonary collapse with the high risk of morbidity and mortality that were manifest over her 12/2018 hospitalization, thereby I suspect having contributed to the advancement of her stroke heart disease later like the non-ST elevation myocardial infarction (NSTEMI) and the stroke."  (Id.)

Petitioner's assertion that Ms. Wu experienced a cascade of unspecified illnesses or abnormalities is insufficient to meet petitioner's burden of proof with respect to establishing a cognizable injury.  Moreover, the medical records that have been filed do not support this contention.  Ms. Wu's medical records reflect episodic emergency department encounters.  None of the medical records indicate that any of these episodes are related to each other or to any unified overarching disease process.

Dr. Jen asserts that the cited abnormalities "peaked" in relation to Ms. Wu's hospitalization in September of 2018 (Id.); however, the records petitioner filed for that hospitalization are not consistent with that opinion (Ex. 5; ECF No. 30-5).  Ms. Wu presented with a recent history of nausea, vomiting, and diarrhea, followed by fever, confusion, weakness, and shortness of breath.  (ECF No. 30-5, p. 25.)  However, petitioner was diagnosed with sepsis, hypotension/bradycardia, and a mental status change.  (Id. at 28-29.)  Although the fact of her alleged flu vaccination was indicated by history at that time, nothing in the record reflects any medical opinion attributing any of Ms. Wu's symptoms to that vaccination.  (Ex. 5.)  Ms. Wu's prior history of dementia is noted, and a CT scan of the brain indicated age-related atrophy and ischemic changes;

however, her more acute mental status change was attributed to either her sepsis or hypotension.  (*Id.* at 10, 18.)  Regarding her bradycardia and hypotension, early heart failure was suspected.  (ECF No. 30-5, p. 23.)  Stroke was ruled out and Ms. Wu's mental status returned to normal after treatment with IV antibiotics.  (*Id.* at 29.)

Dr. Jen also asserts that the cited abnormalities affected Ms. Wu's condition relative to her December 2018 presentation.  (ECF No. 20-1.)  Here too, the medical records are not consistent with this opinion.  At that time, Ms. Wu was brought to the emergency department after having been found by her son with generalized weakness and altered consciousness.  (Ex. 6, p. 12.)  In pertinent part, Ms. Wu was diagnosed with an acute myocardial infarction. (*Id.* at 20.)  Nothing in the records that have been filed associates Ms. Wu's December 2018 presentation with either her prior September 2018 diagnosis of sepsis or her alleged vaccination.

Dr. Jen asserts that Ms. Wu's confusional state and a decreased level of consciousness persisted between September and December of 2018 (ECF No. 20-1.); however, this is also not consistent with the medical records.  Ms. Wu was stable and her mental status recovered when she was discharged in September following her recovery from sepsis.  (Ex. 5, p. 23.)  Her subsequent primary medical encounters of October 30, 2018, and December 4, 2018, raised no concerns regarding her mental status. (ECF No. 20, pp. 15, 22-23.)  No medical records were filed reflecting any deterioration in her health between September and December of 2018.  Moreover, whereas the September 2018 records reflect an altered mental state in the form of a report of confusion, the December 2018 records reflect a report of diminished consciousness.  (Ex. 6, p. 19.)  Even if Ms. Wu did have some ongoing deficits, she has a confirmed history of dementia predating the alleged vaccination as well as documented age-related atrophy and ischemic changes to the brain.

Even if Dr. Jen had adequately described the condition(s) he asserts, his opinion is also insufficient to establish that Ms. Wu suffered any condition caused-in-fact by her vaccination.  *See Althen*, 418 F.3d at 1278 (requiring that petitioner present a "persuasive medical theory" that is "supported by 'reputable medical or scientific explanation'" (quoting *Grant v. Sec'y of Health & Human Servs.*, 956 F.2d 1144, 1148 (Fed. Cir. 1992))).  He did not confirm what vaccine(s) Ms. Wu received and he provides no medical theory that could explain how any particular vaccine, or even vaccinations broadly, could cause Ms. Wu's condition.  Moreover, although Dr. Jen states that Ms. Wu's vaccinations "more likely than not" caused a cascade of abnormalities, he merely "suspects" that these abnormalities contributed to her later heart attack and stroke. (ECF No. 20-1; *see Boatmon v. Sec'y of Health & Human Servs.,* 941 F.3d 1351, 1359-60 (Fed. Cir. 2019) (requiring that the medical opinion be sound and reliable as "possible" or "plausible" theories are inadequate).)  Dr. Jen provides no explanation that would support a logical sequence of cause and effect explaining how Ms. Wu's vaccinations resulted in her condition.  Instead, he merely engages in *post hoc ergo propter hoc* reasoning.  Such reasoning does not support petitioner's burden of proof. *See Galindo v. Sec'y of Health & Human Servs.,* No. 16-203V, 2019 WL 2419552, at

*20 (Fed. Cl. Spec. Mstr. May 14, 2019); *Bulman v. Sec'y of Health & Human Servs.,* No. 19-1217V, 2023 WL 5844348, at *14 (Fed. Cl. Spec. Mstr. Aug. 16, 2023).

### iv.   Failure to Establish Vaccine-Causation of Encephalopathy

Petitioner also contends more specifically that Ms. Wu's altered mental status as documented during her September 2018 hospitalization constitutes a vaccine-caused encephalopathy that also explains subsequent reports of confusion or altered mental state.  (ECF No. 1, p. 2.)  Encephalopathy is a Table Injury, and enjoys a causal presumption, if it occurs within 72 hours of a pertussis-containing vaccine or within 5-15 days of a measles, mumps, or rubella vaccine.  42 C.F.R. § 100.3(a)(II)-(III).  Although petitioner contends multiple vaccinations were administered to Ms. Wu on September 13, 2018, he has not specifically pleaded that she was administered any vaccine containing pertussis, measles, mumps, or rubella.  Even if he had so pleaded, he has not provided any evidence to support such an allegation.  Accordingly, no Table Injury claim is available to petitioner.

With regard to any possible causation-in-fact claim based on the flu vaccination alleged, petitioner's allegation of an encephalopathy is entirely unsupported by any medical opinion.  None of petitioner's treating physicians diagnosed any vaccine-caused encephalopathy.  Ms. Wu did have an altered mental state in connection with her September 2018 hospitalization; however, her treating physicians attributed it to either her sepsis or her hypotension, rather than her reported vaccination.  (Ex. 5, p. 18.)  None of Ms. Wu's medical records reflect any medical opinion suggesting that her subsequent deficits were related to what she experienced in September of 2018.  Instead, the September 2018 medical record confirms that Ms. Wu's mental condition had returned to normal as her sepsis improved.  (*Id.* at 23.).  To the extent that Ms. Wu's medical records reflect a much later diagnosis of encephalopathy in May of 2020, that was specifically attributed to her stroke.  (Ex. 7, p. 37.)  To the extent Dr. Jen offers a medical opinion asserting Ms. Wu's symptoms can be attributed to an overarching disease process, he does not invoke encephalopathy as an explanation.  In any event, his opinion is unpersuasive for the reasons discussed above.

## V.   Conclusion

Clearly Ms. Wu has experienced several medical setbacks during the years following her alleged vaccination.  For that, petitioner, Ms. Wu, and their entire family, have my sincere sympathy.  However, for all the reasons discussed above, petitioner has not provided preponderant evidence of any vaccine-related injury over the two years during which this case has been pending.  Petitioner's failure to produce the records necessary to fully assess Ms. Wu's medical history constitutes a failure to prosecute.  That alone warrants dismissal.  However, even setting aside petitioner's failure to prosecute, he has had a full and fair opportunity to develop the record of this case.  Accordingly, I also confirm that the evidence of record falls short of meeting petitioner's burden of proof.  Therefore, dismissal is also warranted on the merits independent of my conclusion that petitioner has failed to prosecute this case.

This case is now **DISMISSED**.  The clerk of the court is directed to enter judgment in accordance with this decision.[5]

**IT IS SO ORDERED.**

**s/Daniel T. Horner**
Daniel T. Horner
Special Master

---

[5] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by each party, either separately or jointly, filing a notice renouncing the right to seek review.